UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARL L. ROGERS,

               Petitioner,

    -vs-

PAUL CHAPPIUS, JR.,
A/K/A CHARLES CHAPPIUS

              Respondent.
_____

**DECISION AND ORDER**
**No. 12-CV-00148(MAT)**

## I.    Introduction

*Pro se* Petitioner Carl L. Rogers ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered July 1, 2005, convicting him, after a jury trial, of Rape in the First Degree (New York Penal Law ("Penal Law") § 130.35(3)) and Criminal Sexual Act in the First Degree (Penal Law § 130.50(3)) in New York State, Supreme Court, Monroe County. Petitioner was sentenced to two concurrent determinate terms of twenty-five years imprisonment and five years post-release supervision.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.   Factual Background and Procedural History

### A.    Introduction

In January 2005, a Monroe County grand jury charged Petitioner with two counts of rape in the first degree, for engaging in sexual intercourse with nine-year-old B.W. in September and November 2004; one count of criminal sexual act in the first degree, for engaging in anal sexual conduct with B.W. in December 2004;  and one count of rape in the first degree, for engaging in sexual intercourse with B.W.'s seven-year-old sister, W.W., in December 2004.   See Respondent's Exhibit ("Resp't Ex.") A at 9-10, 14.  The first count of the indictment (rape in the first degree related to B.W.) was dismissed prior to trial, and the fourth count of the indictment (rape in the first degree related to W.W.) was dismissed during trial.  Trial Transcript ("T.T.") 243-44, 489-90.

On June 6, 2005, Petitioner proceeded to trial before Monroe County Supreme Court Justice David D. Egan.

### B.    The People's Case

At the time of trial and at the time of the abuse in late 2004, B.W. was nine-years-old and W.W. was seven-years-old.  T.T. 278, 379.  B.W. and W.W. lived with their mother, T.W., and their three year old brother, N.W., in a two-bedroom apartment on Phelps Avenue in Rochester, New York.   T.T. 278-81, 330-31.   T.W. met Petitioner three years prior to the trial, and they had lived together in Arkansas with T.W.'s children.  In February of 2004,

T.W. moved from Arkansas to Rochester with Petitioner and her children, eventually moving into the Phelps Avenue apartment in August of 2004.  T.T. 279-84, 335, 337-38, 382-87, 433-35.

T.W. testified that on the afternoon of December 31, 2004, B.W., accompanied by W.W., came into her bedroom and gave her a handwritten note from B.W. stating that Petitioner had "stuck his d*** in me and [W.W.]," and had told them not to tell anyone.  T.T. 290-94, 354-55.  After reading the note, T.W. called 911.  T.T. 294, 355.  While T.W. was waiting for the police, Petitioner came inside and T.W. repeated the accusations, which Petitioner denied.  T.T. 294-96.

When the police arrived, a male investigator spoke to each girl separately, while other officers spoke to Petitioner.  T.T. 296-97, 300.

After the police interview, T.W. took the girls to Strong Memorial Hospital ("Strong"), where they were examined by a doctor and interviewed by a doctor and a social worker.  Strong referred T.W. to the REACH (Referral and Evaluation of Abused Children) Clinic, where she took the girls a few days later for additional examinations.  T.T. 300-03, 361-62, 409-10, 440-41, 446-47.

B.W. testified that one day in December 2004, when she got home from school, she found Petitioner at home with W.W. and N.W. She learned that Petitioner had brought home clothes from her school for N.W.  T.T. 388-90, 439-40.  B.W.'s mother was at work.

3

T.T. 399.  B.W. began her homework, and, at some point, Petitioner called B.W. into her mother's bedroom.  T.T. 390-91, 444.  He pulled down B.W.'s pants, put her on the bed, pulled down his pants, got on top of her, and put his "private part" in her "front private part" and moved "up and down."  T.T. 391-94, 444-45.  While Petitioner was engaged in sexual intercourse with B.W., W.W. came into the room.  Petitioner eventually stopped having sex with B.W. and turned his attention to W.W.   Petitioner pulled down W.W.'s pants, put her on the bed, and had vaginal intercourse with her.  T.T. 394-96, 398-99, 445-46.  B.W. testified that before she was allowed to leave the bed, Petitioner "turned [her] around" and put his private part in her "back private part."  T.T. 397-98.

B.W. testified further that Petitioner also abused her on a Saturday in November of 2004 while her mother was at work.  W.W. and N.W. were in the playroom when Petitioner called B.W. into his bedroom.  T.T. 400-01, 403, 447-49.  Petitioner directed her to get on the bed, which she did.  He then pulled down her pants and had her lie down sideways, whereupon he laid down next to her and put his penis in her "back private part."  T.T. 401-03.  Petitioner told B.W. not to tell anyone what happened.  T.T. 403.  Later during her testimony, B.W. clarified that during the November incident, Petitioner put his penis in her vagina, not her back "private part," and that she had been "mixed up."  T.T. 411-12. She then recounted three incidents of abuse:  anal and vaginal sex

4

in December, vaginal sex in November, and an incident of anal sex in September 2004.  T.T. 412-13.  B.W. stated that it was hard to keep all of the incidents "straight" because "[i]t's so much to talk about."  T.T. 413.

B.W. testified that she wrote the note to her mother describing the abuse because she "couldn't take it no more cause it started hurting [her] what he was doing."  T.T. 404-05.  She also testified that when the police arrived at her home and interviewed her, she told the investigator only about the anal sex in December because the anal intercourse "hurted more than what he did to the front," and because the investigator did not ask her "if [Petitioner] did anything else."  T.T. 408-09, 425-28.

W.W. also testified at the trial, after the court determined that she was qualified to give sworn testimony.  T.T. 463-76.  The trial court noted, however, that she "might shut down at times" because she was afraid of the judge and defense counsel.  T.T. 475-76.  Subsequently, W.W. had trouble testifying and was repeatedly unresponsive to questioning.  T.T. 480-85. She recalled a school day when Petitioner brought some clothes home, but when she was asked, "[d]id something happen that day when you got home from school," she only replied "yes."  T.T. 484-85.  W.W. agreed that "this [was] hard . . . to talk about" because "everybody [was] looking at" her.  T.T. 485.  Because of W.W.'s non-responsiveness, the court ordered a brief recess.  T.T. 486.  Outside the jury's

presence, the People requested that W.W. be able to continue testifying with the help of a victim advocate upon whose lap W.W. wanted to sit while facing away from the jury. T.T. 486. Over Petitioner's objection, the trial court granted this request. T.T. 487. While sitting on the advocate's lap, W.W. testified that she remembered the day that Petitioner brought home clothes, and answered "yes" to the question, "[d]id [Petitioner] do something to you." T.T. 488-89. The court, however, ended W.W.'s testimony when she answered "yes" to the questions, "is this too hard for you to do," and "[d]o you want to go now." T.T. 489. Given W.W.'s inability to testify, the People moved to withdraw and dismiss the count of the indictment concerning W.W. Without objection from the defense, the trial court ordered the count withdrawn and dismissed. T.T. 489-90.

Dr. Ellen Sofia Bass, a pediatrician at Strong's pediatric emergency room, testified that she and an associate examined B.W. on December 31, 2004. T.T. 580-82; see Resp't Ex. E. Dr. Bass examined B.W. and found a small "cut" or "abrasion" between B.W.'s vaginal and anal openings. T.T. 586-88, 596-97. Bass did not perform an internal digital rectal examination. T.T. 587-88, 596-97. B.W. did not have any vaginal discharge, bleeding, bruises, or hematomas. T.T. 597-99.

Dr. Ann M. Lenane, an emergency room pediatrician at Strong and medical director of the REACH Clinic, testified as an expert in

6

the field of child sexual abuse.  T.T. 601-18, 648, 650-51.
Dr. Lenane examined B.W. on January 4, 2005.  T.T. 618-19.
According to Dr. Lenane, B.W. had no vaginal discharge, and tested
negative for both gonorrhea and chlamydia.  T.T. 629-30, 677-78.
Dr. Lenane found "two linear white avascular areas," one of which
was on B.W.'s posterior fourchette and one of which was on the
perianal area.  T.T. 631.  Dr. Lenane was unable to determine
whether the two white areas were scars from trauma or normal
variants created during embryonic development.  T.T. 631-32.
Dr. Lenane opined that the posterior fourchette lesion was
consistent with vaginal penetration, but could be a normal midline
variant.  T.T. 633, 680-82.  She also opined that the perianal
lesion was consistent with anal penetration, but could be a normal
variant as well. T.T. 633-34.

### (C)   The Defense's Case

Petitioner testified on his own behalf, and denied the
allegations against him.  T.T. 706-761.

Dr. Lawrence Rosenberg testified that he was a board certified
pediatrician licensed to practice in Pennsylvania.  T.T. 498-502.
He testified that he had conducted approximately 6,000 examinations
involving suspected child sexual abuse victims and had testified
approximately 600 times as an expert on sexual abuse.  T.T. 502,
532-33.  In preparing to testify at Petitioner's trial,
Dr. Rosenberg testified that he reviewed police reports and B.W.'s

medical and school records, but did not speak to or examine B.W. T.T. 503-05, 536-37; see Resp't Ex. E.  According to Dr. Rosenberg, B.W. had no rectal tenderness, fissures, bruising, or hematomas. T.T. 505-10.  Dr. Rosenberg found that B.W. had "a superficial fissure between [her] vagina and the opening of [her] rectum," but that the fissure was not caused by traumatic vaginal or anal intercourse.  T.T. 506-07, 509-10.

On cross-examination, the prosecutor questioned whether Dr. Rosenberg could render an unbiased opinion, given that he had been falsely accused by his ex-wife of sexually abusing their daughter.  T.T. 559-60.  He responded that the accusation had been made while the daughter was in her mother's custody, and that the mother had been "committed twice for paranoid schizophrenia."  T.T. 559-60.  Dr. Rosenberg denied that he was "too close to the subject matter to render an objective unbiased opinion."  T.T. 560.  On re-direct, Dr. Rosenberg stated that he was capable of rendering an objective opinion in child abuse cases because he had testified about 600 times for the prosecution.  T.T. 560-61.

**(D) Verdict and Sentencing**

On June 10, 2005, the jury found Petitioner guilty of the remaining counts of the indictment.  T.T. 881.  On July 1, 2005, the court sentenced Petitioner to concurrent determinate terms of 25 years imprisonment followed by 5 years of post-release supervision.  Sentencing Mins. [S.M.] 14-16.

### (E)   Direct Appeal

Petitioner filed a counseled brief (Resp't Ex. F) and an amended counseled brief (Resp't. Ex. G) on direct appeal in the Appellate Division, Fourth Department.   The Appellate Division unanimously affirmed Petitioner's judgment of conviction on February 11, 2010, and leave to appeal was denied.   People v. Rogers, 70 A.D.3d 1340 (4th Dep't 2010) (Resp't. Ex. J), lv. denied, 14 N.Y.3d 892 (2010) (Resp't. Ex. M).

### (F)   Petitioner's Motion to Vacate

On or about July 12, 2011, Petitioner filed a *pro se* motion to vacate his judgment of conviction, pursuant to N.Y. Crim. Proc. Law ("CPL") § 440.10 (Resp't Ex. Q).   On October 25, 2011, the Monroe County Supreme Court denied Petitioner's motion on the merits, and leave to appeal was denied.   See Resp't. Exs. U, Y.

### (G)   The Habeas Corpus Petition

On or about February 7, 2012, Petitioner filed the instant habeas corpus petition, wherein he seeks relief on the following grounds: (1) that his due process rights were violated by a variety of trial court errors and prosecutorial misconduct; (2) ineffective assistance of trial counsel; and (3) the verdict was against the weight of the evidence.   See Pet. ¶ 22(A)-(D), Grounds One-Four.

## III. The AEDPA Standard of Review

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the

Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

For those claims that were adjudicated on the merits in the state courts, the AEDPA standard of review applies. As discussed in detail below, under that standard, Petitioner's claims are meritless.

## IV.  The Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254 (b) (1) (A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 834-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

In this case, all of Petitioner's claims are exhausted, and are properly before this Court.

**V.     Analysis of the Petition**

**A.     Portions of Ground One Alleging Trial Court Error and Prosecutorial Misconduct are Procedurally Defaulted & Portions of Ground One are Meritless**

At ground one of the petition, Petitioner claims that his due process rights were violated by a variety of trial court errors and prosecutorial misconduct.    See Pet. ¶ 22A.    Each of these particular claims is discussed, in detail, below.

**(1.) Alleged Trial Court Errors Arising from Admission of Evidence of Petitioner's Proclivity for Anal Sex and from Evidence Related to Dismissed Charge Concerning W.W.**

Petitioner claims the trial court erred: (1) in admitting the testimony of prosecution witnesses concerning conduct unrelated to the instant crimes (i.e., Petitioner's "proclivity" for anal sex) solely to establish his propensity to commit the instant crimes; and (2) in admitting evidence concerning a charge that was dismissed during trial (i.e., the fourth count of the indictment, alleging abuse of W.W.).   Petitioner also claims that the trial court erred in failing to give the jury curative instructions with respect to the aforementioned evidence.   See Pet. ¶ 22(A).   The Appellate Division denied these claims on a state procedural ground, finding that they were unpreserved for appellate review. See Rogers, 70 A.D.3d at 1340.   Consequently, for the reason set

11

forth below, these two claims are procedurally defaulted from habeas review by this Court.

Under New York law, a criminal defendant must preserve a challenge by making a specific and timely objection.  This procedural requirement stems from New York's "contemporaneous objection" or preservation rule, codified at CPL § 470.05(2).  The rule requires -- for preservation of an issue on appeal -- the party to raise the issue before the trial court at the earliest possible juncture.  "The purpose of the Rule is to fairly apprise the court and the opposing party of the nature and scope of the matter contested." Thomas v. Conway, No. 08-CV-6853 WL 219573 at *4 (W.D.N.Y. January 21, 2011) (quoting People v. Jones, 81 A.D.2d 22, 41-42, 440 N.Y.S.2d 248 (2d Dept. 1981)).

New York's contemporaneous objection rule has been recognized as an adequate and independent state ground barring federal habeas review. Garvey v. Duncan, 485 F.3d 709, 714-15 (2d Cir. 2007) ("[Section] 470.05(2) is a firmly established and regularly followed New York procedural rule"); Richardson v. Greene, 497 F.3d 212, 220 (2d Cir. 2007) ("Where the case law interpreting New York's preservation rule in criminal proceedings displays consistent application in a context similar to the one before us, that rule is firmly established, regularly followed, and hence adequate for purposes of the independent and adequate state ground doctrine.").  In this case, the Appellate Division's reliance upon

12

CPL § 470.05(2) to deny the instant claims is an adequate and independent state law ground that bars habeas review of them.

It is a well-settled aspect of federal habeas jurisprudence that if "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent" (1) a showing of cause for the default and actual prejudice attributable thereto, or (2) a showing that failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722 (1991).

Liberally construing Petitioner's *pro se* pleadings, Petitioner asserts ineffective assistance of trial counsel as the "cause" for the default. See Pet. ¶ 22D. However, as discussed *infra*, Petitioner's stand-alone ineffective assistance of trial counsel claim is meritless, and cannot serve as cause for the procedural default. McCleskey v. Zant, 499 U.S. 467, 494 (1991) (finding that ineffective assistance of counsel can constitute cause sufficient to overcome a procedural default if the counsel's performance amounted to a constitutional violation, but "attorney error short of ineffective assistance of counsel does not constitute cause and will not excuse a procedural default."); see also Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Since petitioner has not established that legal cause exists which excuses his procedural default, this Court need not consider whether he has suffered the

requisite prejudice. <u>See</u> <u>Stepney v. Lopes</u>, 760 F.2d 40, 45 (2d Cir. 1985); <u>Collazo v. Lee</u>, No. 11 CIV. 1804, 2011 U.S. Dist. LEXIS 138825, 2011 WL 6026301, at *3 (E.D.N.Y. Dec. 2, 2011) (finding that because petitioner "failed to show 'cause' for his procedural default, this Court does not need to determine whether he suffered prejudice because relief is unavailable unless both cause and prejudice have been established") (citing <u>Stepney</u>).   Nor has Petitioner established that the Court's failure to review the claim would result in a fundamental miscarriage of justice, since Petitioner has not come forward with any evidence which would have undermined the proof of his guilt presented at trial.  <u>See</u> <u>Caswell v. Racetti</u>, 11-CV-0153 MAT, 2012 WL 1029457 at *6 (W.D.N.Y. Mar. 26, 2012).

Accordingly, these claims are procedurally defaulted from habeas review, and are therefore denied on this basis.

**(2.) Prosecutorial Misconduct Related to W.W.'s Testimony**

As a related claim, Petitioner argues that the prosecutor engaged in misconduct by arguing on summation that the demeanor of W.W. corroborated the testimony of B.W., and that the prosecutor improperly referred to W.W.'s testimony, which was "incompetent" because of the "lack of cross-examination."  <u>See</u> Pet. ¶ 22A; <u>see also</u> Resp't Ex. G at 22-30.  The Appellate Division summarily denied this claim (<u>see</u> <u>Rogers</u>, 70 A.D.3d at 1341), and the AEDPA

14

standard of review therefore applies. Under that standard, Petitioner's claim is meritless.

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). Criminal convictions are not to be lightly overturned on the basis of a prosecutor's inappropriate comments standing alone in an otherwise fair proceeding. United States v. Young, 470 U.S. 1, 8 (1985) (context in which remarks were made must be examined to determine the probable effect on the jury's ability to judge the evidence fairly). For habeas relief to be granted based upon prosecutorial misconduct, it must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Petitioner's claim falls far short of this standard.

As an initial matter, the jury observed W.W.'s demeanor when she took the stand. To the extent W.W. was unable to testify, with any particularity, to abuse suffered because of Petitioner's conduct, there was no basis for defense counsel to cross-examine her, and this explains why he did not request to do so. On summation, the prosecutor reviewed what happened to W.W. when she took the stand and was questioned about Petitioner. The prosecutor stated, "[W.W.] . . . sat back and her head went to the right and

15

she went to a different place . . . .  That right there, what you [the jurors] saw with [W.W.], corroborates what [B.W.] said she saw.  This backs up her story."  T.T. 840.  Insofar as the jury was present during W.W.'s testimony and had the opportunity to observe and evaluate her demeanor themselves, the Court cannot find that the prosecutor's statement was improper.  See e.g., Florez v. United States, No. 07-CV-4965, 2009 WL 2228121, at *19 (E.D.N.Y. July 24, 2009) (finding the prosecutor's summation comment on witness's demeanor was not improper because "[t]he jury was present during the entirety of [the witness's] testimony and was free to disregard the prosecution's characterization of it").

In any event, even assuming the statement was improper, any prejudice was cured by the trial court's repeated charge to the jury that the lawyers' arguments were not evidence and could be disregarded by the jurors since they were the fact-finders.  T.T. 22, 808, 817-18, 845, 857.  It is well-settled that a jury is presumed to have followed a court's instructions.  See Greer v. Miller, 483 U.S. 756, 766 n.8 (1987); Richardson v. Marsh, 481 U.S. 200, 211 (1987); United States v. Feliciano, 223 F.3d 102, 123-24 (2d Cir. 2000).  The state court's adjudication of this claim did not contravene or unreasonably apply clearly established Supreme Court law, and the claim is therefore denied.

### (3.) Alleged Trial Court Errors Arising From Admission of Evidence Pertaining to Petitioner's Abuse of B.W. in September 2004 & Related Prosecutorial Misconduct

Petitioner asserts that his due process rights were violated by the "[t]he errors arising from the [evid]ence of the September [2004] incident." See Pet. ¶ 22A. Petitioner appears to be raising the same claim he raised on direct appeal, in which he argued that: (1) this evidence "was inadmissible because it concerned a charge that had been dismissed" just prior to opening statements; (2) that, even if this evidence was admissible, the trial court should have given a "curative instruction"; and (3) that the prosecutor improperly argued in her summation "that [this] evidence was proof of guilt." See Resp't Ex. G at 33. The Appellate Division summarily rejected these claims, see Rogers, 70 A.D.3d at 1341, and the AEDPA standard of review therefore applies. Under that standard, Petitioner's claims are meritless.

"Issues regarding the admissibility of evidence in state court concern matters of state law and are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness." McCray v. Artuz, 93 Civ. 5757, 1994 U.S. Dist. LEXIS 15602, 1994 WL 603057, at *2 (S.D.N.Y. Nov. 3, 1994). A petitioner seeking habeas relief from an allegedly erroneous evidentiary ruling bears the burden of establishing that the evidentiary error deprived the petitioner of due process because it was so pervasive that it denied the petitioner a fundamentally fair

trial.   See Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985).
Petitioner has not met this standard.

The record before this Court reflects that, prior to opening
statements, the prosecutor stated that B.W. had informed her that
the September incident involved anal sex, not vaginal sex.   T.T.
243-44.   Without objection from the defense, the trial court
dismissed this count of the indictment.   T.T. 244.   In her opening
statement, the prosecutor made no mention of the September
incident.   T.T. 245-47.

During the trial, Petitioner did not object to the evidence of
the September incident.   To the contrary, defense counsel was the
first to elicit the evidence through witness testimony, and also
referred to it in his summation.   Specifically, the People's first
witness, T.W., made no mention of the September incident in her
direct testimony.   However, on cross-examination, defense counsel
elicited that, when B.W. first disclosed Petitioner's abuse, B.W.
did not tell either T.W. or the doctors at Strong that Petitioner
had abused her in September or November.   T.T. 356-57.

Again, during B.W.'s direct testimony, the prosecutor did not
raise the September incident, but rather B.W. mentioned the
incident while clarifying some confusion in her earlier testimony
regarding the November and December incidents.   T.T. 412-13.   At
that time, B.W. stated that it was hard to keep all of the
incidents "straight" because "[i]t's so much to talk about."   T.T.

413.  On B.W.'s cross-examination, defense counsel then focused at length on B.W.'s late disclosure of the September and November incidents.  T.T. 423-24.  For example, defense counsel elicited an acknowledgment from B.W. that she had never mentioned the September or November incidents in her note to her mother, in her interview with Investigator Pero, or in her examination by Dr. Bass.  T.T. 424-28, 440-42. It was not until re-direct – after the defense had opened the door - that the prosecution elicited B.W.'s brief description of the September incident.  T.T. 450-52.  Finally, during the cross-examination of Investigator Pero, Dr. Bass, and Dr. Lenane, defense counsel elicited that B.W. never mentioned any incident of abuse other than the December incident.  T.T. 572-73, 591-92, 671-72.

Moreover, the record shows that Petitioner's attorney made clear in his opening and closing statements that he had a strategic reason for highlighting the September incident.  Indeed, he offered three arguments that relied on evidence of the September incident.

First, he argued that B.W.'s failure to report the September and November incidents until much later (and failure to mention the earlier incidents in her to note to her mother, her interview with Investigator Pero, and her examinations with Drs. Bass and Lenane) showed that BW was not believable and had fabricated all of the incidents of abuse, including the December incident.  T.T. 266-67, 809-11.  Defense counsel also argued that B.W. had lied at trial by

claiming, contrary to T.W.'s testimony, that she initially told T.W. about all three incidents. T.T. 809. Counsel argued that, in light of this intentional falsehood, the jury should disregard B.W.'s entire testimony as false. T.T. 814.

Second, counsel argued that B.W.'s confusion and inability to distinguish between the September, November, and December incidents also suggested that she was lying. T.T. 811-12. Counsel asserted that B.W. was "just forgetting the story that she told and made up, and forgetting the details and changes things as she went along." T.T. 812. Counsel argued that the prosecution had obtained B.W.'s testimony only through "prompting" and suggestive questioning. T.T. 811-12.

Third, counsel argued that "[i]f this happened so many times that she couldn't keep track of these incidents, [it would] increase the likelihood that there would be some medical evidence to support this." T.T. 812. Yet, counsel observed that there was no clear medical evidence of any penetration, much less multiple incidents of penetration. T.T. 266, 804-06.

In sum, Petitioner's counsel affirmatively employed the September evidence to Petitioner's advantage, such that it cannot be said that the admission of this evidence rendered Petitioner's trial "fundamentally unfair" in violation of his federal due process rights. Accordingly, this claim is meritless and is denied.

20

Finally, in a related claim, Petitioner argues that the prosecutor engaged in misconduct when she improperly mentioned the September incident in her summation. See Pet. ¶ 22A. This claim fails to the extent that the prosecutor's statements regarding the September incident on summation constituted a fair response to the defense's repeated references during his summation, and because they clarified B.W.'s testimony about the three incidents of abuse. T.T. 809-812; see Everett v. Fischer, No. 00 Civ. 6300, 2002 U.S. Dist. LEXIS 12075, *7 (E.D.N.Y. July 3, 2002) ("In addition, in determining whether a prosecutor's conduct was unconstitutional, a court 'must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's [remarks] . . . . If the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction.'") (quoting United States v. Young, 470 U.S. 1, 13-14 (1984) (alterations in original)).

In sum, the state court's adjudication of these claims was neither contrary to nor an unreasonable application of clearly established Supreme Court law. The claims are therefore denied.

### (4.) Prosecutorial Misconduct in Arguing that Certain Behavior Indicated Sexual Abuse

Petitioner argues that the prosecutor engaged in "misconduct in arguing on summation that certain [of] B.W.'s behavior indicate[d] sexual abuse." See Pet. ¶ 22(A); Resp't Ex. G at 36-39. The Appellate Division summarily denied this claim, and the

AEDPA standard of review therefore applies.  Under that standard, the claim is meritless.

The record reflects that Dr. Lenane testified, based on her written report, that during the intake interview at the REACH clinic on January 4, 2005, T.W. told her that B.W. was afraid of Petitioner, had decreased appetite and trouble sleeping, and had written that she hated herself.  T.T. 619-621.  Dr. Lenane testified further that such behaviors were "relevant to disclosure of sexual abuse" because they were signs of stress, and "sexual abuse is . . . one of the type[s] of stress that a child can have." T.T. 621.  Dr. Lenane noted, however, that such behaviors were "certainly not diagnostic of child sexual abuse," but merely "symptoms of stress that would probably need some type of attention," including "counseling."  T.T. 621.  On cross-examination, Dr. Lenane testified that such behaviors "could be the result of some other type of stress," such as an "unhappy family situation."  T.T. 669.

On summation, the prosecutor stated that "the witnesses in this case [testified] that kids don't often tell everything the first time they disclose."  T.T. 844.  She also stated that B.W.'s testimony was corroborated by the evidence of changes in her "behavioral patterns."  T.T. 839-840.  The prosecutor's comments were made in rebuttal to defense counsel's arguments on summation that B.W. failed to promptly and fully disclose the entire history

22

of abuse, and that the charges were unsupported and nothing more than the fantasies of a spiteful child. T.T. 801, 809-12. Under the circumstances of this case, the prosecutor's comments were not outside the bounds of permissible rhetoric. See United States v. Rivera, 22 F.3d 430, 438 (2d Cir. 1994) ("[W]hen the defense has 'attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with 'rebutting language suitable to the occasion.'") (quotation omitted). In any event, even if the remark was improper, any prejudice arising therefrom was mitigated by the trial court's jury charge that attorneys' arguments were not evidence and could be disregarded. See T.T. 808, 817-18, 845, 857. See, e.g., Bossett v. Portuondo, No. 97 CV 2116, 1998 WL 433860, at *5 (E.D.N.Y. July 28, 1998).

The state court's adjudication of this claim did not contravene or unreasonably apply clearly established Supreme Court law.  Habeas relief accordingly is not warranted.

### (5.) Prosecutorial Misconduct Based Upon the Alleged "Character Assassination" of Dr. Rosenberg

Petitioner argues that the prosecutor engaged in misconduct through "[t]he character assassination of Petitioner's expert, Dr. Ro[]senberg" on cross-examination and in summation.  See Pet. ¶ 22A; Resp't Ex. G at 39-40.  The Appellate Division summarily denied this claim, and the AEDPA standard of review therefore applies.  Under that standard, the claim is meritless.

In this case, the defense offered Dr. Rosenberg as an expert in evaluating allegations of child sexual abuse. On cross-examination, the prosecutor asked whether Dr. Rosenberg could render an unbiased opinion, given that he had been falsely accused of sexually abusing his daughter. Specifically, the prosecutor asked Dr. Rosenberg whether he was "a little too close to the subject matter to render an objective unbiased opinion." T.T. 559-60. Before Dr. Rosenberg could finish answering the question, the prosecutor ended her cross-examination. T.T. 560. A witness's bias is a valid line of inquiry on cross-examination, such that it cannot be said that the prosecutor's line of questioning on cross-examination was improper. See United States v. Edwardo-Franco, 885 F.2d 1002, 1010-11 (2d Cir. 1989) (finding that cross-examination of prosecution's handwriting expert as to whether expert received several thousand dollars each time he testified for prosecution was relevant to show possibility, or perhaps even a probability, of bias). In any event, no prejudice resulted from the prosecution's cross-examination of Dr. Rosenberg because, on re-direct, the witness expressly stated that he was capable of rendering an objective opinion in child sexual abuse cases, specifically noting that he had testified about 600 times for the prosecution. T.T. 560-561.

On summation, the prosecutor challenged Dr. Rosenberg's testimony in a similar manner, urging the jury to take the

qualifications of Dr. Lenane and Dr. Rosenberg into consideration when deciding whose opinion to believe.  T.T. 837.  The prosecutor then argued that Dr. Lenane's resume and achievements were impressive and argued, in contrast, that Dr. Rosenberg was biased and uninformed.  T.T. 838-839.  To the extent the prosecutor's summation challenged Dr. Rosenberg's impartiality, her comments were not improper.  See, e.g., Davis v. Alaska, 415 U.S. 308, 315 (1974) (noting that "partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony") (quotation omitted).  Assuming the statements were improper, however, any prejudice resulting therefrom was mitigated by the court's repeated charge to the jurors that, as the ultimate finders of fact, they, could disregard the attorneys' summation remarks.  T.T. 808, 817-18, 845, 857.  Furthermore, the pivotal issue at trial was whether or not the jury believed the testimony of B.W., and not whether the physical examinations performed on her were sufficiently comprehensive.  Thus, it cannot be said that the prosecutor's comment on summation with respect to Dr. Rosenberg's qualifications and credentials deprived Petitioner of a fundamentally fair trial.

Petitioner's claim that his due process rights were violated by a variety of trial court errors and prosecutorial misconduct does not warrant habeas relief because the state court adjudicated his claims on the merits in a manner that was neither contrary to,

nor an unreasonable application of, clearly established Supreme Court law.

**B. Petitioner's Ineffective Assistance of Trial Counsel Claims are Meritless.**

At grounds two and four of the petition, Petitioner argues, as he did in the state courts, that his trial counsel was ineffective because his attorney: (1) failed to interview and call three witnesses to testify on his behalf; (2) failed to investigate the background of the defense's expert witness, Dr. Rosenberg; and (3) failed to preserve objections to the alleged trial court errors (discussed *supra*).[1]  See Pet. ¶ 22(D).  Petitioner also argues, as a stand-alone claim in the petition, that the Appellate Division's application of New York's standard of "meaningful representation" when reviewing his ineffective assistance of counsel claims on direct appeal was unconstitutional and contrary to Supreme Court law.  See Pet. ¶ 22 (B).  As discussed below, these claims are meritless and do not warrant habeas relief.

**(1.) Petitioner's Claim that the Appellate Division Failed to Apply the Proper Standard for Reviewing Counsel's Performance is Meritless.**

On direct appeal, Petitioner urged the Appellate Division to apply the Strickland standard to his ineffective assistance of counsel claims.  The Appellate Division expressly applied the New York standard for reviewing Petitioner's ineffective assistance

---

[1]

When raised in the state courts, these claims were denied on the merits. See Rogers, 70 A.D.3d at 1340-1341; Resp't Ex. Q (Pet'r Motion to Vacate).

of counsel claims.  See Rogers, 70 A.D.3d at 1340 (citing People v. Baldi, 54 N.Y.2d 137, 147 (1981)).  New York's test for ineffective assistance of counsel under the state constitution differs from the federal Strickland standard.  The first prong of the New York test is the same as the federal test -- i.e., a defendant must show that his attorney's performance fell below an objective standard of reasonableness.  See People v. Turner, 5 N.Y.3d 476, 480 (2005). The difference arises in the second prong of the Strickland test. Id.  In New York, courts need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Instead, the "question is whether the attorney's conduct constituted egregious and prejudicial error such that defendant did not receive a fair trial." People v. Benevento, 91 N.Y.2d 708, 713 (1998) (internal quotation marks omitted). Thus, under New York law the focus of the inquiry is ultimately whether the error affected the "fairness of the process as a whole."  Id. at 714.  The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was "meaningful representation." Baldi, 54 N.Y.2d at 147.

The Second Circuit, however, has found the New York "meaningful representation" standard is not contrary to the Strickland standard. Rosario v. Ercole, 601 F.3d 118, 126 (2d Cir.

2010) ("We emphasize again that the New York state standard for ineffective assistance of counsel is not contrary to Strickland."). Therefore, Petitioner's claim that the Appellate Division's application of New York's standard of "meaningful representation" is contrary to Supreme Court law is meritless. Mellerson v. Rock, 08-CV-6050 VEB, 2011 WL 1198199, at *8 (W.D.N.Y. Mar. 29, 2011).

### (2.) Petitioner's Remaining Claims are Meritless Under the Strickland Standard.

Petitioner claims that he received ineffective assistance of counsel because counsel failed to interview and call three witnesses to testify on his behalf; (2) failed to investigate the background of the defense's expert witness, Dr. Rosenberg; and (3) failed to preserve objections to the alleged trial court errors and prosecutorial misconduct, discussed *supra*.

In order to establish that he received the ineffective assistance of trial counsel, a petitioner must show that his attorney provided deficient representation, and that he was prejudiced as a result of counsel's shortcomings. See Strickland v. Washington, 466 U.S. 668, 687 (1984). The performance prong of Strickland requires a petitioner to show that "counsel's representation fell below an objective standard of reasonableness." Id. at 686. The prejudice prong requires a petitioner to show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." Id. at 694. "This does not
require a showing that counsel's actions 'more likely than not
altered the outcome,' but the difference between Strickland's
prejudice standard and a more-probable-than-not standard is slight
and matters 'only in the rarest case.'" Harrington v. Richter, 131
S. Ct. 770, 791-92 (2011) (quoting Strickland, 466 U.S. at 693,
697). "The likelihood of a different result must be substantial,
not just conceivable." Harrington, 131 S. Ct. at 792.

Petitioner argues that counsel was ineffective because he "failed
to interview and call as witnesses three persons [James Little,
Tisha Little, and Principal Panisch] who . . . poss[e]ssed material
information which could negate certain aspects of the People['s]
evidence in particular the time the victim claims the underlying
crime occurred." Pet. ¶ 22D. This claim is meritless for several
reasons. First, Petitioner did not establish in state court, nor
does he now, the substance of the purported alibi testimony by way
of affidavits. See e.g., Ortiz v. Artus, No. 06 Civ. 6444, 2008 WL
2369218, at *7 (S.D.N.Y. June 9, 2008) (rejecting ineffective
assistance of counsel claim where Petitioner failed to submit
affidavit from alleged alibi witness, report adopted, 2010 WL
3238994 (S.D.N.Y. Aug. 11, 2010); accord Black v. Goord, 419
F.Supp.2d 365, 380-81 (W.D.N.Y. 2006). "It is too easy for a
defendant to claim after the fact, without supporting evidence,
that he provided leads and information to his counsel that would

have resulted in his exoneration if used." <u>Mallet v. Miller</u>, 432
F.Supp.2d 366, 388 (S.D.N.Y. 2206); <u>accord</u> <u>Roundtree v.
Kirkpatrick</u>, No. 11-CV-6188, 2012 WL 1413054, at *17 (W.D.N.Y.
April 23, 2012). Second, Petitioner has offered no proof – in the
form of affidavit or otherwise - from the aforementioned witnesses,
or defense counsel, that defense counsel did not, in fact,
interview them. Third, "the tactical decision of whether to call
specific witnesses – even ones that might offer exculpatory
evidence – is ordinarily not viewed as a lapse in professional
judgment." <u>United States v. Schmidt</u>, 105 F.3d 82, 90 (2d Cir.
1997); <u>accord</u> <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321
(2d Cir. 1987). Finally, given the lack of proof that these three
witnesses actually possessed probative evidence, the Court cannot
find that there is a reasonable probability that the testimony of
these witnesses would have changed the outcome of Petitioner's
case. <u>See</u> <u>McPherson v. Greiner</u>, No. 02 Civ. 2726, 2003 WL
22405449, at *25 & n.56 (S.D.N.Y. Oct. 22, 2003); <u>Lou v. Mantello</u>,
No. 98-CV-5542, 2001 WL 1152817, at *10 (E.D.N.Y. Sept. 25, 2001).
Accordingly, this claim is meritless.

Next, Petitioner claims that he received ineffective
assistance of trial counsel because counsel failed to investigate
the background of the defense's expert witness, Dr. Rosenberg. <u>See</u>
Pet. ¶ 22D. This claim is meritless as well. First, Petitioner
has offered no evidence in state court, nor does he do so now,

establishing that defense counsel did not, in fact, investigate Dr. Rosenberg's background.   Moreover, Petitioner cannot establish prejudice insofar as Dr. Rosenberg testified favorably for the defense.   At trial, Dr. Rosenberg testified that he was a board certified pediatrician licensed to practice in Pennsylvania, and that he had conducted approximately 6,000 examinations involving suspected child sexual abuse victims and had testified approximately 600 times as an expert on sexual abuse.   T.T. 498-502, 532-33.   He concluded, after reviewing police reports and B.W.'s medical and school records, that B.W. suffered no rectal tenderness, fissures, bruising, or hematomas, and that while B.W. had "a superficial fissure between [her] vagina and the opening of [her] rectum," the fissure was not caused by traumatic vaginal or anal intercourse.   T.T. 503-07, 509-10, 536-37.   Although, on cross-examination, Dr. Rosenberg revealed that he had been accused by his ex-wife of sexually abusing his own daughter, he clarified that the accusation had been made while the daughter was in her mother's custody, and that the mother had been "committed twice for paranoid schizophrenia."   T.T. 559-60.   Additionally, Dr. Rosenberg denied that he was "too close to the subject matter to render an objective unbiased opinion," and explicitly stated he was capable of rendering an objective opinion in child abuse cases because he had testified about 600 times for the prosecution.   T.T. 560-61.

Petitioner also claims that he received ineffective assistance

of trial counsel because counsel failed to preserve objections to the alleged trial errors and prosecutorial misconduct, discussed *supra*.  This claim fails to the extent that Petitioner's underlying claims of trial error and prosecutorial misconduct are meritless, and trial counsel cannot be faulted for failing to lodge objections on baseless grounds.  See e.g., United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005).

With respect to Petitioner's claim that he received ineffective assistance of counsel because his attorney failed to object to a variety of alleged trial court errors in connection with W.W.'s testimony, that claim is meritless.  Here, counsel may have reasonably decided that W.W.'s testimony was favorable to the defense, given that W.W. – the only alleged witness to the abuse – was unable to corroborate B.W.'s account of events.  Similarly, counsel may have reasonably decided not to object to what Petitioner refers to as the "coaxing" of W.W. to the extent that doing so may have offended the jury's sensibilities by appearing hostile to a child witness.  In any event, Petitioner has not demonstrated that counsel's alleged errors related to W.W.'s testimony prejudiced him because W.W.'s testimony was not damaging in any way to the defense.

Likewise, there is no merit to Petitioner's claim that he received ineffective assistance of counsel because counsel failed to object to evidence concerning the September charge (even though

32

that charge was dismissed prior to trial), and to request a limiting instruction with respect thereto.  As discussed *supra*, Petitioner's underlying claim of trial error in this respect is meritless, and trial counsel cannot be faulted for failing to object to a meritless issue.  To reiterate, Petitioner's counsel strategically used B.W.'s testimony related to the September incident to support Petitioner's case.  To this extent, defense counsel had a reasonable strategic basis to refrain from objecting to the evidence related to the September 2004 incident and to request a curative instruction after the charge was dismissed.

Next, Petitioner argues that he received ineffective assistance of counsel because counsel failed to object to Dr. Lenane's testimony that B.W.'s behavior was consistent with her claim of abuse and the prosecutor's related argument on summation that the behavioral evidence at trial corroborated B.W.'s credibility.  This claim fails insofar as Dr. Lenane did not, in fact, testify that B.W.'s behavior was "consistent with B.W.'s claim of abuse" (see discussion *supra*).  And, to the extent the prosecutor's summation remarks regarding Dr. Lenane's testimony were objectionable, Petitioner's attorney may have reasonably decided not to object so as to avoid drawing attention to and/or highlighting the remark for the jury.  Additionally, as discussed *supra*, any prejudice resulting from the prosecutor's remark was mitigated by the briefness of it and the court's repeated jury

charges that attorneys' comments during summation are not evidence. Thus, this Court cannot find that there is a reasonable probability that the outcome of the trial would have been different had defense counsel objected in this instance.

Finally, Petitioner claims that he received ineffective assistance of counsel because counsel failed to object to the "character assassination" of Dr. Rosenberg. This claim fails because the prosecutor's cross-examination of Dr. Rosenberg was not objectionable insofar as it challenged Dr. Rosenberg's objectivity and impartiality. To the extent the line of questioning was improper, Petitioner's counsel effectively rehabilitated Dr. Rosenberg on re-direct, thereby eliminating any prejudice flowing therefrom.

In sum, Petitioner's ineffective assistance of counsel claims are meritless and do not warrant habeas relief. Petitioner has failed to demonstrate that the state court's adjudication of these claims contravened or unreasonably applied clearly established Supreme Court law. Accordingly, Petitioner's ineffective assistance of counsel claims (Grounds Two and Four of the petition) are denied.

## C. **Petitioner's Weight of the Evidence Claim is Not Cognizable**.

At ground three of the petition, Petitioner argues that the jury's verdict was against the weight of the evidence. Specifically, he claims that B.W.'s testimony was unreliable

because children are vulnerable to suggestion by adults, and are often unable to separate suggested facts or fantasy from reality. He also argues that B.W.'s testimony was the product of leading questions and improper coaching, was motivated by her dislike for Petitioner, and was inconsistent. Petitioner also points to Dr. Lenane's testimony in support of his claim, maintaining that it was "speculative" and "without any factual basis," and that it was, in part, refuted by Dr. Rosenberg. See Pet. ¶ 22(C). The Appellate Division rejected this claim on the merits. See Rogers, 70 A.D.3d at 1340. As discussed below, this claim is not cognizable on habeas review.

A weight of the evidence claim is "an error of state law, for which habeas review is not available." Douglas v. Portuondo, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002); Correa v. Duncan, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5)"); see also Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence . . . are for the jury and not grounds for reversal on appeal. . . .") (citations omitted).

Thus, Petitioner's weight of the evidence claim is denied for failure to state a cognizable constitutional question.

## VI.   Conclusion

For the reasons stated above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed.  Because the Petitioner has failed to make "a substantial showing of a denial of a constitutional right," pursuant to 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Request to proceed on appeal as a poor person must be filed with Untied States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    April 30, 2013
          Rochester, New York

36